AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the
Northern District of New York

**UNITED STATES OF AMERICA**
**v.**

JUAN PABLO HERNANDEZ-FLORES,

**Defendant**

Case No. 5:26-mj-00206(CBF)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) of September 1, 2026 in the county of Jefferson in the Northern District of New York the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| 8 U.S.C. § 1326(a) | Illegal re-entry |

This criminal complaint is based on these facts:
See attached affidavit

☒ Continued on the attached sheet.

[signature]
*Complainant's signature*

Abdrual Duran Garcia, Border Patrol Agent
*Printed name and title*

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date: September 3, 2026

[signature]
*Judge's signature*

City and State: Syracuse, New York

Hon. Carla B. Freedman, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Abdrual Duran Garcia, being duly sworn, depose and state that:

1. I am a Border Patrol Agent employed by the Department of Homeland Security, Customs and Border Protection, U.S. Border Patrol (USBP). I have been a Border Patrol Agent with USBP since 2025. I am currently assigned to the Wellesley Island Station, Buffalo, New York Sector, where I investigate all federal administrative and criminal violations. In my capacity as a Border Patrol Agent, I have participated in and conducted immigration enforcement investigations involving suspected violations of federal immigration law, including unlawful presence, violations of nonimmigrant visa classifications, and visa overstays. My investigative responsibilities have included conducting interviews, reviewing immigration records and identity documents, preparing reports, documenting observations and evidence, and coordinating with other law enforcement officers and agencies.

2. During my assignment to the Targeting Unit at Wellesley Island, New York, I conducted investigative research and analysis concerning suspected immigration violations and cross-border criminal activity in Watertown, New York, and the surrounding area. My duties included conducting surveillance, analyzing relevant law enforcement and immigration information, preparing written reports, and documenting facts, observations, and investigative leads. Through this work, I assisted in identifying subjects of investigative interest and supporting enforcement actions based on lawfully obtained information and articulable facts.

3. The information contained in this affidavit is based on my personal knowledge obtained during the course of this investigation and on information conveyed to me by other USBP Agents. Because this affidavit is being submitted for the limited purpose of establishing probable

cause for this complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause for this complaint.

4. Based upon the facts set forth below, there is probable cause to believe that Juan Pablo Hernandez-Flores ("Hernandez-Flores") has violated Title 8, United States Code, Section 1326(a).

5. On September 1, 2026, I, Border Patrol Agent Abdrual Duran Garcia, was performing assigned duties as a member of the Wellesley Island Border Patrol Station Targeting Unit within the Wellesley Island area of responsibility. I was working with Border Patrol Agents Pedro Alvarez, Jhosue Escate, and Ross LaMore. A concerned citizen contacted the Wellesley Island Border Patrol Station to complain about possible suspicious activity involving a white Dodge Ram pickup truck bearing Illinois license plate 3311557B at the Salmon Run Mall. Supervisory Border Patrol Agent (SBPA) Seth Payne contacted me to relay the above information from the concerned citizen and directed me to investigate. I subsequently requested the assistance of the Targeting Unit members to investigate the report.

6. At approximately 1240 hours, while investigating the citizen complaint at the Salmon Run Mall, I observed the vehicle described in the complaint parked in front of Best Buy. The vehicle was a white Dodge Ram pickup truck bearing Illinois license plate 3311557B, with the rear-right passenger door slightly ajar. Record checks were conducted on the license plate through DHS databases; however, we were unable to obtain information from the State of Illinois motor vehicle records.

7. Based on my training and experience as a Border Patrol Agent assigned to the Wellesley Island Border Patrol Station, pickup trucks of this type, particularly when equipped with

construction-related gear, are commonly used by construction crews. Based on my experience within the Wellesley Island area of responsibility, aliens who are unlawfully present in the United States commonly travel from out of state to the Watertown, New York, area to work at construction sites. Given these observations, the inconclusive database results, and the citizen complaint, I decided to conduct a consensual encounter with the vehicle's occupants.

8. While the agents continued to observe the white Dodge Ram, I observed four individuals entering the vehicle. The occupants were wearing construction clothing, including fluorescent safety vests; the female occupant was wearing a construction hard hat. BPA Alvarez and I approached the vehicle on foot to initiate a consensual encounter. At the time of the encounter, we were wearing Border Patrol-issued, bullet-resistant vests bearing clearly visible Border Patrol patches and insignia. BPA Alvarez and I identified ourselves as Border Patrol Agents and began speaking with the occupants. I asked the occupants how they were doing and explained that I was investigating a complaint made by a concerned citizen. The driver acknowledged the statement and consented to the encounter. I asked the occupants where they were working and their place of work. The driver said that he was working by Amazon. BPA Escate and BPA LaMore arrived on scene and also identified themselves as Border Patrol Agents and assisted by asking the occupants if they possessed identification or documentation proving lawful presence in the United States. No vehicle or agent was used to block or restrict the movement of the White Dodge Ram.

9. During the encounter, the driver provided his driver's license. The driver said that he was not a U.S. Citizen, but that he had a pending asylum case. The front passenger stated that she was a United States citizen and the daughter of the driver. One rear passenger sitting behind the driver stated that he was born in the United States. Another rear passenger provided his driver's license to BPA LaMore, and the remaining rear passenger provided an Illinois driver’s license to

me. The license identified this individual as Juan Pablo Hernandez-Flores. All occupants provided their identification voluntarily when asked if they possessed any identification.

10. I conducted record checks through DHS databases using the identifying information provided. I had another agent verify my record checks. The record checks indicated that Juan Pablo Hernandez-Flores had previously been removed from the United States after being an alien unlawfully present. Hernandez-Flores had been subject to an Expedited Removal to Mexico in 2023.

11. BPA Alvarez asked Hernandez-Flores whether he understood English or Spanish better. Hernandez-Flores responded that he understood Spanish better. My first language is Spanish, and I can read and write in Spanish. I then spoke with Hernandez-Flores in Spanish and asked whether he had any documents proving that he was legally allowed to be in the United States. Hernandez-Flores initially stated that he was a lawful permanent resident. When I asked if he had his green card on his person, Hernandez-Flores responded that he did not, claiming his employer had taken it. He said that he could get his documents from his house. He said he didn't know where the house was, but it was about 5 minutes away from Best Buy. I asked Hernandez-Flores if he had ever been deported, and he replied that he had never been deported or removed from the United States. Through further questioning, Hernandez-Flores admitted that he was not a lawful permanent resident and did not possess a green card.

12. BPA Escate then advised Hernandez-Flores that the record checks reflected information related to a prior removal. Hernandez-Flores then admitted that he had previously been removed from the United States. When asked whether he was currently unlawfully present in the United States, Hernandez-Flores confirmed that he was. All questions were conducted in Spanish, and Hernandez-Flores maintained a fluent conversation with the agents.

13. Based on Hernandez-Flores's statements, the results of the DHS record check, and the circumstances developed during the immigration inspection, I determined there was probable cause to believe Hernandez-Flores was an alien unlawfully present in the United States after having previously been removed.

14. I instructed Hernandez-Flores to exit the vehicle multiple times, but he did not comply. After Hernandez-Flores failed to comply with repeated instructions, BPA LaMore and I began removing him from the vehicle by pulling him by his arms and legs. Hernandez-Flores resisted the agents' efforts by clinging to parts of the vehicle, such as the front passenger seat. I was forced to place Hernandez-Flores on the ground while other agents secured his arms and legs. After a struggle, I was able to handcuff Hernandez-Flores and informed him that he was under arrest. No weapons were displayed at any time during this incident.

15. Hernandez-Flores was placed under arrest and transported to the Wellesley Island Border Patrol Station for further processing and disposition. I obtained Hernandez-Flores' fingerprints, performed an Iris scan, and I photographed him. I ran his prints and the results of the Iris scan through DHS databases. The database checks revealed that his name was Juan Pablo Hernandez-Flores; he was a citizen of Mexico; and that he was removed from the United States via Expedited removal on or about December 08, 2023, from the Laredo, Texas Port of Departure.

16. I conducted a comprehensive query of databases maintained by United States Citizenship and Immigration Services and confirmed that Hernandez-Flores has not applied for, nor obtained, permission from the Attorney General or the Secretary of the Department of Homeland Security to reenter the United States after his 2023 removal.

17. Based on the foregoing, I respectfully submit that there is probable cause to believe that, on or about September 1, 2026, Hernandez-Flores violated Title 8, United States Code,

Section 1326(a).

ATTESTED TO BY THE APPLICANT BY TELEPHONE IN ACCORDANCE WITH THE REQUIREMENTS OF RULE 4.1 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

Abdrual Duran Garcia
Border Patrol Agent

I, the Hon. Carla B. Freedman, United States Magistrate Judge, hereby acknowledge that this affidavit was attested by the affiant by videoconference on September 3, 2026, in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Hon. Carla B. Freedman
United States Magistrate Judge